Good morning, Your Honor. My name is Diane Cidchampion of the law firm of McCarthy, Johnson & Miller in San Francisco. I represent the Appellants Board of Trustees of the General Employees Trust Fund. I'd like to reserve five minutes of my time for rebuttal. This appeal arises against a backdrop of an employer's attempt to have the trust fund cover ineligible individuals. Of these ineligible individuals who were not entitled to coverage, some were in Southern California, whereas the trust fund covers only individuals in Northern California. Moreover, some of these people... Kennedy, Jr. It really doesn't matter too much about what the merits of the claim would be. The question is whether the arbitrator or the court should be deciding it. And there's one question I'd like to ask you at the outset. The question is whether the arbitrator or the court should be deciding it. This was an arbitration that you held under Section 7.13 of the trust agreement, right? It was held under that procedural mechanism. However, the grant of authority to arbitrate is under Section 6.6 of the trust agreement, which provides a broad grant of authority to arbitrate any obligation claim or liability of the trust agreement under Section 7.6 of the trust fund. The specific procedures are set forth in Section 7.13, and there are no other specific provisions for the procedure. Counsel, I see the language in 6.6, but does it matter that the heading says trustees' powers with respect to obligations, liabilities or claims? Why shouldn't I read that provision as simply authorizing the trustees to authorize the trustees to engage in arbitration on behalf of the trust, and then look to 7.13 to determine what types of arbitrations or what types of claims may be arbitrated? I think the reason is the language in Section 6.6 itself, which provides for arbitration of, quote, any obligations, liability or claim involving this trust, end quote. And clearly, a claim for losses arising from the coverage of these ineligible individuals is a liability or claim involving the trust. But, counsel, you're reading out of the sentence, the portion you just quoted to me, you're reading out the first part of the sentence that says the trustees shall have the power to, and then it speaks of arbitrate, any obligations, liability or claim involving this trust. I read that clause as modifying the power of the trustee as opposed to defining the scope of what types of claims may be arbitrated. Am I missing something here? Well, it seems that if the trustees have the authority to arbitrate, in general, any claim, liability or obligation, then there must be a way that they can do that. And the way that Why do they have to look to 7.3? Can't they just follow California arbitration law? Well, they might be able to do that, but that's not the mechanism that they chose in this case. But you provide a mechanism for a particular type of arbitration, not all claims arising under the agreement. As you pointed out, Section 6.16 talks about all claims arising under. The expedited procedure applies to certain claims. As Jake Pius said, what do you do about the other claims that don't fall under the expedited procedure? Do they not follow ordinary California arbitration law? Well, I think that all of these provisions in the trust That's a wholly different point from Judge Sullivan's, of course. I think all of the provisions in the trust agreement that deal with arbitration need to be harmonized. And in addition to the general reference to claims for delinquent contributions in the preamble to Section 7.13, there also is a provision in Section 7.13d which deals with how the parties will pay for arbitration in the event that there is a loss. And that's the key. That's all part of 7.13. That is part of 7.13. But if you look at that language, it says that the arbitrator can rule that contributions are delinquent or that the employer has not fully complied with all trust fund requirements. And by seeking coverage for ineligible individuals, the employer has not fully complied with all trust fund requirements. Excuse me. Were you saying that he may provide that the employer may, that the arbitrator may rule not all? Section 7.13d, where it talks about who pays for the arbitration, and it says that if one party loses because the arbitrator finds that contributions are delinquent or that the employer has not fully complied with all trust fund requirements, then that party is deemed the loser. Obviously, the arbitrator can't rule that an employer has not fully complied with all trust fund requirements unless he has the authority to do that. And this is all in Section 7.13 itself. But to get back to Judge Paez's question, if that is how the arbitrator determines the award of attorney's fees, how does that help us answer the question as to the scope of the expedited arbitration provision in the subsections above D? Because the arbitrator obviously would need to have the authority to make this ruling that there hasn't been compliance with all trust fund requirements. That's not my question. My question is how do we carve out those claims that are subject to expedited arbitration from other claims that may be subject to nonexpedited arbitration? That's, I think, the question that Judge Paez was asking you. And I think that the ---- I have a follow-up question to that as well. I think in terms of harmonizing all the provisions together, we need to look at it all in context and see that there is no other procedure in the trust agreement. But why is it called expedited? That was my follow-up. Why do you call this ---- What's expedited about this procedure under 7.13? Well, the procedure provides for no briefing and ---- Let me ask you this. Does California law require briefing? It doesn't require briefing. Okay. So it says that all arbitrations are to be conducted pursuant to California Arbitration  So if California ---- if the California Arbitration Act doesn't require briefing, what is expedited about this process? Well, it's actually a good question since the employer stalled this arbitration so many times, and it didn't end up being expedited in the sense of being rapid. I think it's just a name that they gave to this provision. I don't know ---- The generic reference we would sometimes refer to arbitration is that it's supposed to be speedy and expedited. I believe that's the case. I, frankly, don't know the history of it. Let me ask you, if 7.13 didn't exist, what would the ---- and the trustees were confronted with a demand or a request or they wanted to engage in arbitration, how would they conduct the arbitration? Well, the difference would be that they would have no provisions in the agreement to ---- Yes, but that leads to the question Judge Pius asked. How would they conduct pursuant to what, since there are no provisions for anything other than expedited arbitration? Well, I think that the difference would be that there wouldn't be any procedure set forth for how to choose an arbitrator. That's a big part of what's in Section ---- So how would you go about doing it if they're not set forth in the agreement, is the question. The parties would have to get together and agree on certain procedures in terms of how they would choose an arbitrator and when it would be conducted and those sorts of things. It's not a very well-drafted trust agreement. I don't disagree with that, Your Honor. I did not draft it, but it is what it is. And I think ---- Explain to me how the trustees interpreted the term delinquent contributions to include losses arising from improper contributions. There were a couple of things that the trustees looked to. First, even in the preamble, which refers to the delinquent contributions, I think there are three ways that you can define delinquent contributions. One is late contributions. The second is unpaid contributions. And the third is erroneous contributions. And ---- That's the latter. That is the bulk, right? That's correct. Well, that's the part that's in dispute. Abel made, with the exception of what was it, $2,000, Abel made contributions on behalf of workers in Southern California that the trust now says we're not obligated to provide benefits for. We went ahead and provided those benefits, and now we seek to recoup the difference between what we paid out and the money we received in all-column premiums. That's essentially true. There actually were two audits. In one of the audits, there was substantially more that was in the nature of unpaid contributions. But the concept is you're right about. Here is over the third category. Exactly. And so to get back to Judge Paez's question, how can you broadly define the term delinquent contributions to include that third category where the employer did in fact make contributions, but now the plan wants to recoup benefits that it says it wasn't obligated to pay because it didn't have to cover those employees? The trustees define delinquent contributions to include these erroneous contributions, and I think that it's made clear. You said that definition is in the preamble? The reference to delinquent contributions is in the preamble. There is a document in the record called policy statement regarding, quote, delinquent and, quote, contributions, and that document, which was drafted by the trustees, refers to erroneous contributions as well as unpaid or late contributions. Which page of the record is that document? Is that the policy statement on 536? It is the policy statement, and I will get you that reference in just a moment. And when in relation to this litigation was that policy statement adopted? I could not tell you the exact date of the policy statement, but it was long before this arbitration occurred. It wasn't triggered by the dispute with Abel? Absolutely not. No, absolutely not. So would it be on 543 of the record? It is. No, that's not it. Well, maybe you can take a look at it when the other side is up. I would be happy to do that. I wanted to just make a couple of other quick points. I do have another question along the same lines. Is it reasonable to say that at least, you know, when you read this trust agreement and the provisions that we've been dealing with, the use of the term contribution seems to refer to the ongoing monthly contributions that the employer must make on behalf of covered employees? At least that's the sense I get from reading the document. Now, is it reasonable to also broaden that term to encompass losses from erroneous contributions? We think that it is reasonable. Well, the trustees have a broad discretion to interpret the trust agreement. They interpreted it this way. It was reasonable. It was in good faith to ensure the solvency of the trust fund. And I think we need to bear in mind the admonition from the Supreme Court in the Steelworkers Trilogy that arbitration should not be denied unless it can be said with positive assurance that there's no arguable or colorable claim that the matter is arbitrable. And that's the backdrop against which this arises. And I think we've made good, reasonable arguments that when you look at all of the provisions of the trust agreement together, 6.6, 7.13d, 7.7, and you look at it all together, that these are matters that are subject to arbitration. If we agreed with that, that it is arbitrable, but that it was not arbitrable under the expedited procedure, where would we be then? Well, I think that the arbitrator – we've had the arbitration. The arbitrator said it was under section 7.13. They just said it didn't participate because they thought – let's assume they did not agree that they had to do the arbitration under this process. I believe that there was no notice that this was an arbitration under section 7.13. It just said we're going to have an arbitration. This is the date, time, and place. If you don't appear, you're going to be bound by the arbitrator's decision. I think if we look at this as if this were a motion to compel arbitration rather than a motion to confirm the arbitration award, we would see that under those circumstances, this Court could determine that the matter would be arbitrable. And I don't think that we should be swayed by the fact that the arbitrator said this happens to arise under section 7.13. Was there no – in the record, nothing referred to 7.13 until the arbitrator did? I cannot recall any place in the record where the arbitration was referred to as under section 7.13. I can check the record and see whether there is any such reference. I wanted to refer briefly to the point about attorney's fees, which – If you prevail, you don't have to worry about it. You've got three minutes for rebuttal. I just wanted to say that even if we don't prevail, we should be entitled to attorney's fees on the part of this matter on which we prevailed in the court below. And I will reserve the rest of my time. Thank you. You'll look for the – I will. Okay. Thank you. Good morning. Carrie Johnson for Able Building Maintenance, the appellee. Actually, going to that, the one argument concerning the provision in the policy statement regarding erroneous contributions, that's found on the appellant's excerpt from the record, page 154. And it's section 7 of the policy statement that was prepared and issued by the trust fund. If you read that section, it specifically refers to excess contributions by an employer. An employer is paying too much for a given employee or employees. And it specifically delineates what the procedures are for the employer to recoup those excess contributions. It has nothing to do with improper contributions. Losses. I'm sorry? Losses. Correct. From improper contributions. Correct. Correct. It's specifically limited to excess contributions. Overpayments by the employer. But if I understand your opponent's argument, if we accept the premise that expedited arbitration, whether that has some special meaning or not, was designed to ensure the solvency of the funds so that any disputes that might impact the solvency would be quickly resolved through arbitration, why wouldn't it be reasonable to adopt her interpretation of delinquent contributions as the trustees broadened it in their role as, I guess, the delineators of, you know, disputes under the trust fund? Well, the trustees really only have discretion to broaden that meaning if it's ambiguous. And it's not ambiguous. The term delinquent contribution, if you look up Black's Law Dictionary and even look in the trust documents, specifically refers to unpaid contributions. And I referred in our brief to Section 8.8 of the trust indenture, which specifically addresses how payments are to be made, how the contributions are to be made, and that if the payments are not received by the trust fund by a certain date, they are they shall be considered delinquent. As I read that, and I think as the lower court read that, the that is a definition of delinquent. What do you do with these other provisions in 713 that counsel pointed out? 7.13d? For example, 713, yes, d, and I think there's another one. I believe that was the only one that she referred to, and that essentially is a prevailing party attorney's fee type provision. And it specifically refers to the very last five words in that section, specifically saying that employers shall be deemed the, quote, loser for purposes of this provision. This provision is Section 7.13, which is specifically limited to claims for delinquent contributions. She also referenced 7.7. Maybe I copied it down wrong. What does that say? I think it was 6.6, which is kind of the general. It's 6.6, 7.13d, and then I wrote down 7.7, but I don't see a 7.7 in my copy of the trust agreement. That deals with employer. If such audit discloses any deficiency in contributions. Is that the one? It refers to employer information and discrepancies in data. I missed the page. It's my fault. Sorry. And I don't recall that that was part of the argument in their brief. But turning to the Section 6.6, which they also rely on as kind of conferring some broad power to arbitrate, I think the significance of that section is it doesn't confer any rights or obligations or duties on the part of the employer. And when you have an agreement to arbitrate, you have to have an agreement by the parties to arbitrate particular agreements. Is it the employer's position in this case that they're not responsible for the losses? The employer's position is that the procedure utilized. That's not my question. In other words, in other words, I don't want to force you to acknowledge that you are responsible, but I guess your position is that assuming that you are, they have to file a lawsuit. Correct. It has to be litigated, not arbitrated. Correct. And then I think you get into issues of ERISA, whether those types of damages are recoverable under ERISA. I don't understand your position on arbitrate. You say the employer, this 6.6, which says the trustees have the power to arbitrate any claim or any obligation, any liability under this trust. You say if you did do this, you might have a liability under the trust, but this doesn't give them the power to arbitrate it because it doesn't also say and the employer shall be a party. What it does is it gives the trust, the trustees, the power and the opportunity to arbitrate disputes. Any breach of the agreement. I'm sorry? Any breach of the agreement. Potentially it could be read that way, but it does not bind the employer to arbitrate. Well, who are they going to arbitrate with? What does it mean? If none of the employers are bound by this clause, but they can arbitrate with themselves, who else are they going to arbitrate with? They can enter into agreements with the employer or whoever they're going to arbitrate with. So I just think that the What about the right to sue them? Does that mean this doesn't give you a right for breach of contract either? I'm sorry? It doesn't give you a right for a suit for breach of contract? I would think that the trust agreement probably does give them the right to do that. But under this particular provision, 7.13, which is the expedited arbitration provision under which the trust proceeded at issue in this, that is specifically limited to claims for delinquent contributions. Well, that's the 7.3? 7.13. 7.13. Let me just see that in one minute. 7.1. The trust agreement. Well, let me look at this other one. And it states the trustees, and I'm quoting now, may refer any claim against an employer for delinquent contributions to final and binding expedited arbitration subject to the following. Then it has the four subsections. Now, where does it say in there that the employer has to arbitrate? Because it refers to may refer any claim against an employer to expedited arbitration. The other says may breach of the agreement. Who is it to breach of the agreement by? By the employer. Any dispute under the agreement. It says they may arbitrate. This says they may arbitrate under an expedited procedure any claim against an employer. Correct. And that's what we're dealing with. The arbitration that also What? Tell me the difference. I don't have a problem following it. 6.6. Correct. It says they may arbitrate any dispute that arises under the agreement. Compromise, arbitrate or otherwise settle any obligations, liability or claim involving this trust. Yeah. That obviously includes any obligation incurred by an employer, because that's 99% of the obligations and the liabilities and the claims. They're normally going to be against the employer. But it doesn't say the employer must do anything there either. This says they may refer 731.13 says they can refer anything involving an employer. But it doesn't say the employer must do it either. Well, it does because it specifies the procedures for the arbitration which the employer must abide by in sections A through D. So it's setting forth an arbitration process. Well, but it says it can do it. And maybe that means if the employer agrees to do it, just as you say this one does. Well, I think section 6.6 just gives them the power to do it. It doesn't specify the arbitration procedure. In order to bind someone to an arbitration, a binding arbitration, you have to have an agreement to arbitrate. And the agreement to arbitrate that's at issue in this case is an expedited arbitration pursuant to 7.13. If there were an arbitration clause in a contract that said, if there's a violation of this agreement, the parties shall arbitrate, and that's all it said? If because it didn't specify the procedures, there would be no obligation? No, I believe there would because that what the provision that you just recited would state that the claims have to be arbitrated. So it's not the absence of procedures, then, in section 6.6? I just think the title of that section and the way it's worded refers to the powers that are given to them. It doesn't specify that arbitration of claims occur and bind the employer in that respect. Ms. Johnson, as I understand it, there was a companion action that was assigned to Judge Legg, and he entered summary judgment in favor of the employer? Correct. What was the basis for that summary judgment? That was filed in U.S. District Court, and it essentially sought the same types of things in this case. He said that the trust fund couldn't recover. He said that neither the trust fund agreement, or the trust indenture, rather, or any provision of ERISA provided for recovery of those types of damages. So presumably, if we deny the trust fund the ability to confirm this arbitration award, and if we accept your opponent's statement that expedited arbitration means all arbitration, presumably, if the trust fund filed a lawsuit, you would then raise Judge Legg's summary judgment and say, we don't have to pay because he's already ruled, and it's now collateral estoppel and res judicata. That's correct. And the one thing that was argued in that particular case that Judge Legg appeared to be very interested in is the fact that ABLE was making pay – ABLE Engineering was making payments, and the trust fund was accepting them. So it's kind of a situation where if there were no claims paid out for these particular individuals, that probably nothing would have happened. The trust fund would have kept the premiums that were paid by ABLE, ABLE Engineering. The trust fund is charged, I guess, under his view of the relationship with the obligation not to erroneously pay claims on behalf of beneficiaries who are not legitimate beneficiaries. Correct. Or accept it. And if the trust fund does that, then the trustees have presumably perhaps breached ERISA duties to the beneficiaries. Correct. But they can't look to the employer to indemnify them for those errors. Correct. Are you alleging in this case that Judge Legg's ruling is collateral establishment? Well, unfortunately, Judge Legg didn't issue a written opinion. But, yes, I mean, we've indicated in our brief that, and we argued it in the lower court, that basically the same thing has happened in another case with a different but sister employer. ABLE Engineering is a sister employer of or sister corporation, rather, to ABLE Billing Maintenance. And that not only goes just to the fact of Judge Legg's ruling, but also goes to the trustees or the trust fund's claim that they acted in good faith in making this interpretation. But they saw that in front of Judge Breyer. Correct. And he didn't rule on that? I don't know if he – it's in his opinion. That information is in his opinion. He was certainly aware of it, was he not, when he was? Yes. Yes. And he addressed that issue. That's what I thought. I don't know that he specifically ruled that there was collateral stopper. But he addressed it. He addressed the fact that there was this prior litigation in his opinion. The trust agreement doesn't specifically define contributions, does it? Not in terms of putting it in quotes and saying contributions are. Means. Right. But it does. Well, if it's not defined, why can't? They have the authority under 6.2R to enforce the payment of any contributions or other amounts payable or recoverable here under. Why couldn't they define contributions to encompass losses that have occurred as a result of improper contributions? Because we're not talking about contributions. Contributions are, if you look, for example. Oh, I know that. But why can't they define it, contributions to encompass? Because that would be contrary to the plain meaning of that term, contribution. Contribution, as used in this agreement and in the policy statement, refers to the payments that employers make on a monthly basis for eligible employees. And that's clear throughout this document. It's clear in the policy documents. And just the plain meaning of the term contribution is that they're contributing to the trust for the benefit of the employees. So, I mean, I think that the any interpretation other than that just isn't reasonable. It just doesn't take into account just the plain meaning of that term. Contribution. Correct. Even though it's not clearly defined in the definitions clauses. That's true. There's a whole bunch of definitions, but it doesn't include contributions. Correct. But Section 8.8 does refer to the manner of making contributions. And that's the section I referred to earlier that refers to. What is it, Section 8.8? 8.8 refers to the manner of making contributions. And it also contains what I would. There's a number of paragraphs. Which one are you talking about? Well, the whole paragraph kind of refers to the issue of contributions. And then the second full paragraph, starting with all employer contributions to the trust fund, shall be due on the 10th day of the calendar month. That specifies the method of the contribution. And that also, as I indicated earlier, defines the term delinquent contributions, because it specifically says that if contributions aren't received by a certain date, that those contributions shall be considered delinquent. And then if you take that, apply it to the expedited arbitration provision, that's what the expedited arbitration provision is intended to cover. The only thing that's expedited about this arbitration is the fact that no briefs are allowed. And I think there's no transcripts. And I think the timing of it as well. I think it could be set up on fairly short notice. Well, that was the original intent of arbitrations. They'd be done that way. I understand. They've gotten more and more complicated and drawn out and delayed, and particularly through appeals to the courts. I understand. They're starting to morph into lawsuits. Yes, they are. They are. Let me ask you one question. Judge Breyer obviously was totally aware of the whole procedural history of this matter and did not, in his decision, pay any attention to Judge Lake's decision. Now, it's true that he ruled on a different ground, and he didn't say anything either way in his ruling about the effect of the first case. Is it your position that if we thought he was incorrect, that this matter is not covered by the arbitration agreement, that he would then might reach another issue on which whether it's barred by collateral estoppel? Did you ask him to rule on that basis? I just want to make sure I understand your question. Are you asking if Judge Breyer found that this particular claim was subject to the expedited arbitration provision? Would he have ruled? I said if he had, let's say, if instead of finding that this was incorrect, would he have? Do you believe that you have preserved an argument that it's barred, that he would then reach and consider? I believe so, because it was raised in all the papers that were submitted to him. It was argued. He didn't say anything either way about that. He didn't specifically rule on that issue. He, like I said, he mentioned he has a paragraph about that or a section. Correct. But what I'm asking is whether he, in his ruling, I have the written ruling, would anything that he said, did he state his position either way on whether Judge Legg's ruling presented an obstacle or didn't present an obstacle? He did. I don't believe he did. I don't believe he did. Well, you have 40 seconds. You don't feel compelled. No. I think I've addressed all the issues that I wanted to address. Thank you. I have found the policy statement regarding delinquent contributing employers. It appears in the excerpts of record at 147 to 156. It contains no definition of delinquent contributions, and it refers to erroneous contributions as well as delinquent contributions. I'd like to correct the record with respect to the ruling below by Judge Legg. That involved Able Engineering. That's a different company from Able Building Maintenance. Able Engineering was a nonunion company not bound to a collective bargaining agreement. If the issue, I mean, I'm not trying to prejudge the race judicata issue, but it would be, as I understand it, offensive use of collateral estoppel to bar the same party, the trust fund, that had the same motive to try and recoup the money in the arbitration as it did in the lawsuit, wouldn't it? Because there was no written decision. All we know is that Judge Legg denied summary judgment. He ruled in summary judgment in favor of Able Engineering. And our contention is that he probably did that because there was no underlying obligation, because there was no collective bargaining agreement, no binding trust agreement, and therefore they had no obligation, period. So I think what I'm hearing both of you saying is that it's an open issue. If we were to remand this matter to Judge Breyer, unless we direct him to decide the case a certain way, it seems to me that each side has arguments as to whether it is or is not binding. I think that it would be a very difficult issue to decide below since there's no written decision in the Able Engineering case, and I don't know how Judge Breyer or anyone else could determine what was in Judge Legg's mind in denying summary judgment. Did the other side, when they were before Judge Breyer, ask him to apply collateral estoppel or res judicata or to give Judge Legg's decision any legal effect in this case? They referred to it, and they tried to use it in some way, but there was nothing really that they could put their hands on. Well, then you don't have to be worried if it's remanded, and that's one of the issues that's open. If there's nothing they can do with it, it won't concern you. I think that it's a problem in the record in the Able Engineering case. There's no record of what was intended by the denial of summary judgment. We're running out of your time. Yes. Is there anything else? Yes. I wanted to say that there was an issue about what could be done in the case that there's no right to arbitration, and the issue of the employer filing a lawsuit against the employer, and that's not an option here. It's not available under the terms of ERISA. Furthermore, we think that the trust agreement is ambiguous inasmuch as there are these sections 6.6 permits the trustees to initiate litigation. Your position would be they couldn't under ERISA? Not for this particular type of action. They can initiate litigation for certain types of things, but to cover these contributions for the ineligible individuals, there would not be any way to do that under ERISA or under any other legal authority. And I think it's also important to look at Section 7.7. That was the section that I referred to. It deals with the ability of the trustees to conduct audits both for the purpose of determining the accuracy and sufficiency of payments made by an employer, and I think that's significant, that we're not just looking at sufficiency as to whether all the monies have been paid, but also the accuracy, and also that Section 7.7 allows for audits to discover any discrepancies, and clearly this was a discrepancy. Note that in reading Section 7 of the policy statement that it refers to excess contributions by the employer and the employer's request for a refund, and it provides further that any benefit payments made on behalf of the should be or will be deducted from the excess contributions. It doesn't say what happens if the amounts paid out exceed the contributions. It says, as Judge Pius says, that you deduct it from the, you know, if you got a million in contributions and you paid out 500,000, you deduct it, but it doesn't say what happens in the other case. I'm overtaking you two minutes over. So the case just argued will be submitted. The Court will take a brief recess. We have one other matter we have to take care of before the next argument. Thank you, Your Honors.
judges: Reinhardt, Paez, Tallman